[No. 4691.   Decided July 28, 1903.]

# W. D. IRWIN, *Appellant,* v. GREENVILLE HOLBROOK, *Respondent.*

STATUTE OF LIMITATIONS — PLEADING — INCONSISTENT DEFENSES.

A denial of a cause of action arising out of a trust relation and the receipt of money from the sale of land is not inconsistent with a plea of the statute of limitations, setting up a repudiation of any trust relation more than three years prior to the commencement of the action, as both allegations may be wholly true.

TRUSTS — FRAUD — STATUTE OF LIMITATIONS — LACHES.

Where lands were conveyed in 1885 to a surety, as trustee to sell and pay a debt of $1,100, and after selling nearly all the land in 1890 there was a large surplus in the hands of the trustee, who fraudulently represented that there was a balance still due him of $600 after the sale of all the land (which had cost $2,200), and a settlement was then made whereby the owner gave the trustee a note for $500 for such supposed balance, and the fraud was discovered in 1897 by learning of an indorsement on the note of $450 on account of land sales, and

by an inspection of the public records, disclosing deeds nearly all filed prior to the settlement, and all filed prior to 1892, and the owner knew that the sales were being made from 1885 to 1890, and lived in the town where the sales were made practically all the time, and had easy access to the records, and was a man of ordinary intelligence, holding responsible public office, he is guilty of such negligence in not discovering the fraud for more than six years after the repudiation of the trust relation that he will be held to have discovered it more than three years before the action was begun, and the same is barred by the statute of limitations.

Appeal from Superior Court, Whitman County.—Hon. CHESTER F. MILLER, Judge. Affirmed.

*Thomas Neill* and *A. A. Wilson,* for appellant.

*John Pattison,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This is the second appeal in this cause. On the former appeal a judgment dismissing the cause upon the ground that it appeared upon the face of the complaint that the action was barred by the statute of limitations was reversed, and the cause remanded for further proceedings. *Irwin v. Holbrook,* 26 Wash. 89 (66 Pac. 116). The amended complaint alleges, in substance, that on February 21, 1885, plaintiff was the owner of certain real estate; that on said date the plaintiff conveyed this real estate to defendant pursuant to an agreement to sell the property, and out of the proceeds to pay certain indebtedness of plaintiff, and thereupon to account to and pay to plaintiff any surplus remaining after the payment of said debts; that defendant sold said property for a sum larger than the amount of the debts, but refused to account for or pay to plaintiff the said surplus, or any part thereof. On or about the

1st day of June, 1898, plaintiff demanded an accounting, which was refused. The complaint was filed on October 1, 1898. A more complete statement of the allegations of the complaint will be found in the opinion in *Irwin v. Holbrook, supra.* To this complaint the defendant answered, denying all the allegations thereof except the ownership of the land by plaintiff on February 21, 1885, and also an allegation that at said date there was a mortgage thereon of $300. As a first affirmative defense the defendant alleged, in substance, that on the 21st day of February, 1885, he purchased from plaintiff the land described in the complaint, and paid therefor the sum of $800 in cash, and assumed a mortgage of $300, with interest, against the land; that thereafter plaintiff had no further interest in said lands or the proceeds thereof. For a second affirmative defense, defendant alleges, in substance, the purchase of the land, as in the first affirmative defense; that defendant sold said lands between February 28, 1885, and December, 1891, to divers persons, and that deeds for all of the land sold were placed of record in the auditor's office of Whitman county prior to January 1, 1892, more than three year's prior to the commencement of this action; that plaintiff had notice more than three years prior to the commencement of the action that all of said real estate had been sold by defendant; that he acquired said notice prior to the first day of January, 1892; that he did not commence this action within three years after said notice; and that the action is barred by the statute of limitations. To these affirmative answers plaintiff demurred on the ground that none of them stated facts sufficient to constitute a defense to the cause of action stated in the complaint. These demurrers were overruled by the court. Plaintiff

then replied, denying each of the allegations contained in the affirmative defenses.   On the issues thus formed a trial was had before the court.   At the close of plaintiff's evidence the court found, among other things, "that the plaintiff did not commence his action within the time limited by law, and that plaintiff's cause of action, if any he had, is barred by the statute of limitations," and thereupon dismissed the action.   Plaintiff appeals, alleging that the court erred (1) in overruling the demurrer to the second affirmative defense; and (2) in all the findings made.   Under the view we have taken of the case, it will be necessary for us to discuss only the first alleged error, and also the finding of fact that the action is barred by the statute of limitations.

1.   In support of the demurrer, appellant argues that the plea of the statute of limitations is in the nature of confession and avoidance, and, since the answer contains a denial of the cause of action, the plea of the statute of limitations is inconsistent with the denial of the cause of action.   In the case of *Seattle National Bank v. Carter,* 13 Wash. 281 (43 Pac. 331, 48 L. R. A. 177), this court, in an exhaustive review of the authorities, came to the conclusion "that, however diversified the answers may be, they must all contain the essential element of truth, and if the admission of the truth of one answer necessarily proves the falsity of another, they cannot be allowed to stand."   In *Davis v. Seattle National Bank,* 19 Wash. 65 (52 Pac. 526), this court said:

"We are of the opinion that a defendant may deny liability, and at the same time set up a counterclaim or offset, or allege payment, in all cases where there is no direct contradiction in the special facts pleaded."

Defenses are inconsistent only when one in fact contradicts the other.   Where there is only a seeming and logical

inconsistency, which arises merely from a denial and the plea in confession and avoidance, such defenses are not held to be inconsistent.    Bliss, Code Pleading (3d ed.), § 343; *Willson v. Cleaveland,* 30 Cal. 192; *Lawrence v. Peck,* 3 S. D. 645 (54 N. W. 808). So long as different defenses are consistent with the truth, they may be pleaded.    If two or more defenses may be true, they cannot be said to be inconsistent.    Defenses are inconsistent where the proof of one necessarily disproves the other, or where if one be true the other cannot be.    In this case the defendant denies any trust relation to plaintiff.    He then pleads as one separate defense, in substance, that he purchased the land outright from plaintiff, and that since the time of this purchase plaintiff has had no interest therein or in the proceeds thereof.    He then pleads that plaintiff had notice long prior to the bringing of the action that defendant claimed the land and proceeds, and that the time within which plaintiff might have maintained this action had long since expired.    All of these allegations may be wholly true.    There is therefore no such inconsistency as would prevent the defendant from pleading them, and the demurrers were for that reason properly overruled.

2.    The evidence upon the question whether or not the action is barred is the evidence of the appellant himself, and is substantially as follows:    He purchased the land about the year 1884 for $2,200.    He deeded the land to the respondent in February, 1885.    Respondent then agreed to take the land, sell it, and pay certain debts owing by plaintiff to third persons, and also to pay the appellant whatever remained.    Appellant at this time was living at Pullman, in Whitman county.    The land adjoined the town of Pullman. . Respondent had the land platted

into town lots, and sold all the lots. The deeds therefor were placed of record in Whitman county before December, 1891. Appellant lived in Whitman county all the time from 1885 to October 1, 1898, when the action was begun, except about fifteen months, during the years 1887 and 1888, when he was in Idaho, and except about a year, from the spring of 1894 to the spring of 1895, when he was in the state of California. During all the time from 1885 to 1890 he knew respondent was trying to sell the land, and was selling it. On October 13, 1890, appellant called upon respondent for a settlement, and respondent thereupon told him that the land had all been sold, but that the expenses of platting, taxes, and selling the land had been so great that the proceeds were not sufficient to meet these expenses and the note and mortgage assumed by respondent, by about $600. At that time respondent agreed to take appellant's note for $500, due in two years, in settlement of the whole matter. Appellant consented thereto, and executed and delivered his note to respondent for that amount. This note was not paid at maturity, and appellant and respondent had no further talk about the matter until the fall of 1897. In 1893 respondent indorsed on the note the following: "Sept. 1, 1893. Cr. on the within $450 on real estate at Pullman. This closes all real estate acct." In the fall of 1897 appellant called upon respondent, and what occurred at this meeting is related by appellant as follows: "He wanted me to renew this note—this $500 note that I gave in 1890; and I told him, all right, I would renew it; and we went into his office to renew this note, and he got it out and on the back of it was this credit of $450, and on it was written 'Cr. on the within $450 on real estate in Pullman. This closes all real

estate acct.' So I says to him, 'You told me at the time I signed the note that the land was all sold, and did not bring enough, by $500, to pay $800 and the $300,' and I says, 'Here, now, you credit me with that.' Then he commenced to explain to me that part of the land he had sold on time, and this $450 was some he had collected since the note was given, which he had given up as lost. . . . I began to think then that he was lying about the whole transaction, and I positively refused to sign it." Appellant thereafter examined the record of the real estate transfers, and found that the consideration expressed in the recorded deeds made by defendant for the lots sold was a large amount in excess of the $1,100 which was to be paid on account of the debts. Appellant then made a demand for another accounting, which demand was refused.

Assuming that the evidence of the plaintiff was properly received, and assuming that it conclusively proves that the respondent received the lands and proceeds thereof for the benefit of the appellant, and that there was a large surplus remaining in respondent's hands on October 13, 1890, when the settlement was had, the trust relation was clearly repudiated at that time by the respondent; the appellant acquiesced therein and agreed thereto, and gave respondent his note for $500 in payment of an agreed deficiency. In making this settlement, appellant relied upon the statement of respondent that the proceeds of sales had not been sufficient to reimburse respondent for money expended. This statement was false and fraudulently made. Appellant did not actually discover the fraud until August, 1897, and then the discovery was made by an examination of a public record which disclosed the amount of money received by re-

.spondent. This record was open to appellant at all times, and the facts contained therein had been open to appellant for at least six years. When the cause was heard on a former appeal, we held that the complaint was "sufficient when it contained a direct and positive statement of the time of the discovery of the fraud, without further negativing the idea that the fraud might have been discovered sooner; leaving it rather a rule of evidence than a rule of pleading, if it still be the rule that means of discovery is equivalent to actual discovery." *Irwin v. Holbrook, supra; Stearns v. Hochbrunn,* 24 Wash. 206 (64 Pac. 165).

The question now is, does the evidence show such negligence on appellant's part that the fraud, though not actually known, will be held to have been discovered more than three years before the action was begun. We think it does. Upon this question this court, in *Deering v. Holcomb,* 26 Wash. 588, at page 598 (67 Pac. 240, 561), said:

"Our statute, in effect, says that the cause of action is deemed to have accrued when the fraud is discovered. What is discovery? We answer, notice of the fraud. What is notice? This we can best answer in the language adopted by the supreme court of the United States: 'Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. . . . The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.' . . . A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clue to the fact, which, if followed up diligently would lead to a

discovery, is in law equivalent to discovery,—equivalent to knowledge."

In this case the evidence shows that in 1884 appellant purchased the property for $2,200. He transferred it to respondent in 1885 to sell, and pay debts amounting to $1,100. From 1885 to the fall of 1890 times were as prosperous in that vicinity as they had ever been. On October 3, 1890, respondent had sold all the property, and stated to the appellant that the net proceeds thereof were less than $600. The records of the sales were then nearly all on file, and during the next year deeds for the whole thereof were on file in a public record open to appellant. The sales occurred in the same town where appellant was living during nearly all of the time. He had easy access to the record. He is shown to be a man of at least ordinary intelligence, having held responsible public office during the time of these transactions, and yet he waited for six years before making an inquiry or examination to discover the facts. Under such circumstances, we think that ordinary prudence and business judgment required appellant to open his eyes and look at the record before him to verify the statement as to the amount realized on the sales. Respondent's declaration that property of the value of $2,200 had been sold so as to net less than $600 was of itself sufficient to cast suspicion upon the statement, and cause an ordinarily prudent man to examine the public record which showed the amount of the selling price. Appellant's delay for a period of more than six years, it seems, ought to preclude him from now maintaining the action.

The judgment is therefore affirmed.

ANDERS, HADLEY and DUNBAR, JJ., concur.

FULLERTON, C. J., having been of counsel in the court below, did not sit in this case.